**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

JUDITH K. ROGAN,                          )
      Plaintiff,                          )
                            )
     v.                                       )       CAUSE NO.: 2:07-CV-403-JVB
                            )
UNITED STATES OF AMERICA and              )
DEXIA CREDIT LOCAL, f/k/a DEXIA           )
PUBLIC FINANCE and CREDIT BANK            )
and CREDIT LOCAL DE FRANCE,               )
      Defendants.                         )

**OPINION AND ORDER**

This matter is before the Court on Dexia Crédit Local's Motion to Transfer Venue and Memorandum in Support [DE 24], filed by Defendant Dexia Crédit Local ("Dexia") on November18, 2007. Plaintiff Judith K. Rogan ("Judith Rogan") filed a Response on December 6, 2007, and Dexia filed a reply on December 21, 2007.[1] Dexia seeks an order of the Court transferring this case to the Northern District of Illinois, Eastern Division, pursuant to the "first-to-file" rule and 28 U.S.C. § 1404. As set forth below, the Court grants the motion to transfer under § 1404(a).

**PROCEDURAL AND FACTUAL BACKGROUND[2]**

**A.  Underlying Cases**

Since early 2002, Dexia, the United States, and Edgewater Medical Center ("EMC") have pursued a series of fraud cases in the Northern District of Illinois against Peter G. Rogan ("Peter Rogan") and his wholly-owned or controlled companies. As a result of these cases, judgments have

---

[1] On December 3, 2007, the United States filed a "Concurrence With Dexia Crédit Local's Motion to Transfer Venue."

[2] To the extent that Dexia sets forth relevant procedural and background material in its brief that is not supported by citation to evidence but also is not contested by Judith Rogan, such background is presented in this section as representations made by Dexia.

been entered against Peter Rogan and his companies for hundreds of millions of dollars.  Peter Rogan is Plaintiff Judith Rogan's husband.

The fraud judgments against Peter Rogan and his wholly-owned hospital management and property companies arise from two independent fraud schemes that Peter Rogan perpetrated via his role as CEO of EMC from 1994-2001: (i) a healthcare fraud scheme and (ii) a scheme to deceive EMC into foregoing an option to purchase real estate adjacent to the EMC hospital buildings and instead to pay his company exorbitant rents to lease the property.

Three cases have arisen related to the healthcare fraud:  *United States v. Rogan*, 02 C 3310 ("*United States v. Rogan*"); *Dexia Crédit Local v. Rogan*, 02 C 8288 ("*Dexia v. Rogan*"); and *Edgewater Medical Center v. Braddock Management, L.P.,* 04 A 2327 ("*EMC v. Braddock*").  All three are Northern District of Illinois cases arising out of identical core facts but leading to three different injuries.  The cases led to entry of three separate judgments against Peter Rogan and his companies, which total $201,629,114.10.[3]  Judith Rogan is not a party to any of these lawsuits nor is she a subject of the judgments entered therein.  In *Dexia v. Rogan*, the Court entered judgment against Peter Rogan and his adjudicated alter egos Braddock Management LP and Bainbridge Management, Inc.  Judith Rogan is not identified as an alter ego in that matter.

In *United States v. Rogan*, Judge Darrah held that "Rogan had a direct financial interest [in the fraud scheme at EMC] as Rogan and his family owned and controlled [the hospital's management company] between 1995 and at least March 2000.  Rogan's ownership interest was concealed through an elaborate scheme of inter-locking financial entities owned by Rogan, Rogan's children, and other entities owned by Rogan . . . ." 459 F. Supp. 2d 692, 698 (N.D. Ill. 2006).  Judge

---

[3] The judgment in *United States v. Rogan* was $64,259,032.50 and the judgment in *Dexia v. Rogan* was $124,280,712.79.  Dexia represents that the judgment in *EMC v. Braddock* was $13,089,368.81.

Darrah also found that Peter Rogan denied knowledge of the trusts in Belize that his personal attorney had set up for Rogan's three children "but later acknowledged that, as of a certain point, 90 percent of [the funds] were flowing to his children's domestic and Belizean trusts." *Id.* at 699.

Dexia represents that a fourth case, *Edgewater Medical Center v. Edgewater Property Co.*, 04 A 2328 ("*EMC v. EPC*"), addressed the real estate fraud and that the Northern District of Illinois bankruptcy court entered judgment therein against Peter Rogan's wholly-owned real estate company, Edgewater Property Company ("EPC"), for fraud and breach of contract.   Dexia represents that this fraud was unrelated to the healthcare fraud.   In addition to ordering specific performance on an option, the court awarded damages of $4,643,857.24.   Dexia represents that the period for appeal on this verdict has passed.[4]

### B.  Defendants' Collection Efforts

On October 4, 2006, and as amended on July 12, 2007, the United States recorded a judgment lien against the property at 476 Wexford Road, Valparaiso, Indiana (the "Wexford Property").   The Wexford Property is owned by the Judith K. Rogan Revocable Trust, dated April 19, 1989, as amended, of which Judith Rogan is the trustee.

On June 18, 2007, Dexia filed a registration of the NDIL judgment in *Dexia v. Rogan* in the Northern District of Indiana, case number 1:07-mc-4, which was terminated the same day. Allegedly shortly thereafter, Dexia filed a judgment lien against the Wexford Property.

Dexia represents in the motion that, due to the extended, highly-contested financial discovery in these cases, Defendants have developed proof that Peter Rogan has attempted to conceal assets

---

[4] Dexia provides factual details of all the fraud cases against Peter Rogan that the Court does not reproduce here. *See* Def. Br., pp. 6-10.

in excess of $30 million by funneling those funds via domestic and off-shore businesses, trusts, and accounts in the names of his family members.  However, Dexia represents that Defendants have not yet completed this discovery in those cases, as a result of (i) the refusal of Judith and Peter Rogan to provide critical portions of the documents requested; (ii) the sheer complexity of the business entities and financial structures Peter Rogan has caused to be erected in the United States and abroad, of which Dexia is currently aware of 52; and (iii) the Rogans' alleged continuing attempt to shield the transfers of funds from discovery, in part, by causing funds to transfer offshore through the possession of Judith Rogan.

For example, JKR Business is purportedly a sole proprietorship of Judith Rogan with an address in Merrillville, Indiana, and has been the sole source of Judith Rogan's reported earned income since at least 1997.  The contract manager for the lease of certain real property that was the subject of the real estate fraud in *EMC v. EPC* was JKR Business.  For the years 1996 and 1998-2000, the only years for which records could be found, JKR Business' sole source of income was from "business services fees" it received from two of the Peter Rogan-controlled companies involved in the underlying litigations.  However, Peter Rogan testified under oath that JKR Business was a decorating business his wife established that never got off the ground.

On October 16 and 18, 2006, Judith Rogan opened bank accounts at HSBC bank in Canada. On October 21, 2006, Judith Rogan signed a lease for a residence in Vancouver and renewed that lease on May 1, 2007.  Dexia represents that shortly after the ruling in *United States v. Rogan* on September 29, 2006, Peter Rogan terminated his counsel in all actions pending against him and his companies in the NDIL; abandoned his office in Merrillville, Indiana, including computers and

selected financial records (removing or destroying the rest); and left his Indiana home and took up residence in Vancouver.

On November 3, 2006, Judith Rogan transferred $1.5 million from an account in her name in The Bahamas to one of her new HSBC accounts in Canada. By November 24, 2006, an additional $4.4 million came into that account. Subsequently, Judith Rogan used a portion of these funds to pay $100,000 to the Chicago law firm Hogan Marren, Ltd. via a wire transfer from her account at HSBC Bank in Canada to the firm's account in Chicago, which Dexia represents was for representation of Peter Rogan in his appeal of the *United States v. Rogan* judgment to the Seventh Circuit Court of Appeals. Dexia represents that, although it learned of this transfer via a subpoena to the Hogan Marren firm, Judith Rogan has refused to produce the specifics of her accounts at HSBC notwithstanding numerous requests by Dexia.

Regarding Judith Rogan's account in The Bahamas, it appears that at least $1.5 million of the transferred funds were wired to Judith Rogan's HSBC account from Oceanic Bank and Trust in The Bahamas. Peter Rogan controls a trust at Oceanic Bank, which in 2005 held assets of $25 million and which the tax filings of Judith Rogan indicate is owned entirely by Peter Rogan. Judith Rogan first filed a Treasury Department form acknowledging the existence of her Oceanic Bank account in 2006, indicating that she opened this account during the same period in which the Rogans were coordinating their transfer of assets to Canada.

Based on her tax records from 1997 through 2004, Judith Rogan has never had substantial earned income or investments.

Dexia represents that it has expended enormous time and resources in the NDIL litigating numerous complex issues to obtain discovery relating to Peter Rogan's assets and finances as

5

demonstrated by the numerous motions to compel filed by Dexia.  As a result of the numerous motions, judges in the Northern District of Illinois presiding over those cases have become familiar with the complex ownership structure of the entities controlled by Peter Rogan, the complex financial dealings and transactions between and among Peter Rogan and those entities, and the variety of ways in which Rogan used accounts in the name of his family to move and conceal funds.

On January 30, 2007, and June 7, 2007, Defendants initiated supplementary proceedings against Judith Rogan in the Northern District of Illinois litigation via citations to discover assets held by Judith Rogan for the benefit of Peter Rogan.  Dexia represents that Defendants also have recently served additional citations upon Peter Rogan and others with access to proof regarding the Rogans' finances.  Dexia represents that Judith Rogan responded to Dexia's citations by producing records in Chicago, and Dexia alleges that the production is severely incomplete.

When Dexia issued subpoenas to Judith Rogan and to her purported sole proprietorship JKR Business in the citation action, Judith Rogan's counsel, who also represents her in this case, originally informed Dexia that JKR Business had no bank accounts.  Once Dexia subpoenaed the Private Bank & Trust in Chicago, however, Dexia obtained account records for JKR Business. [Dexia represents that, in an effort to obtain records relating to Judith Rogan's finances from Peter Rogan, Peter Rogan's counsel was ordered by Magistrate Judge Schenkier in the NDIL to search for responsive documents at Peter Rogan's office; Judith Rogan's tax returns and bank and investment account records were produced and are now maintained in Chicago.]  Also, Dexia represents that the only JKR Business financial records that Dexia has been able to obtain have come from Chicago through the Private Bank & Trust Company in Chicago, EPC, and Chicago attorneys John Foley and John Tatooles.

On August 24, 2007, Dexia's counsel informed Judith Rogan's Chicago counsel that on August 28, 2007, Dexia would move in the Northern District of Illinois for a rule to show cause why Judith Rogan should not be held in contempt for her failure to produce critical records for her account at Oceanic Bank in The Bahamas.

### C.  The Instant Cause of Action

On August 27, 2007, Judith Rogan filed a suit against Defendants in the United States District Court for the Northern District of Indiana, which the Court dismissed on October 29, 2007.

On November 2, 2007, Judith Rogan commenced the instant cause of action in the Porter Superior Court against the United States of America and Dexia Crédit Local by filing a Complaint to Quiet Title, for Declaratory Relief, Injunction and Slander of Title.

In the Complaint, Judith Rogan alleges the following facts.  Judith Rogan is a citizen and resident of the state of Indiana and resides at 476 Wexford Road, Valparaiso, Indiana.  Judith Rogan is trustee of the Judith K. Rogan Revocable Trust, dated April 19, 1989, as amended ("The Trust").  Judith Rogan purchased the Wexford Property, real property known as 476 Wexford Road, Valparaiso, Indiana, personally in 1989 and subsequently transferred the property into the Trust in 1994, such that the Trust is now the record owner of the Wexford Property.  She alleges that in August 2007, she contracted to sell the Wexford Property to third-party purchasers.

Judith Rogan also owns personal property in the State of Indiana, including various accounts in a number of financial institutions located in Porter County, Indiana.

Defendant United States purportedly holds a judgment against Peter Rogan in the matter *United States v. Peter Rogan*, Case No. 02 C 3310, in the Northern District of Illinois, Eastern

Division.  Defendant Dexia purportedly holds a separate judgment against Peter Rogan in the matter of *Dexia Credit Local v. Peter Rogan*, also in the Northern District of Illinois, Eastern Division. Judith Rogan alleges that neither Dexia nor the U.S. holds a judgment against Judith Rogan or the Trust.

Judith Rogan alleges that, although Defendants have served citations in the Northern District of Illinois seeking information related to Judith Rogan's assets in an effort to collect on their judgments against Peter Rogan, the citations have not sought to adjudicate Judith Rogan's interest in the Wexford Property or any personal property held by Judith Rogan.  She also alleges that Defendants have not filed any pleadings in the Northern District of Illinois alleging that the assets held in Judith Rogan's name or that of the Trust are in fact assets belonging to Peter Rogan and are subject to the claims of his creditors.

The United States has filed a "lien" against the Wexford Property.  Judith Rogan alleges that the "lien" is invalid because it names "Judith K. Rogan," personally, as the owner of record rather than the Trust.  Dexia has also asserted a "lien" against the Wexford Property.

In her Complaint, Judith Rogan denies any assertion by Defendants that any assets held by her individually or through her trust belong to Rogan and affirmatively asserts her ownership and right to peaceful possession of that property.

Counts I and IV of the Complaint are Actions to Quiet Title against the United States and Dexia respectively, in which Judith Rogan seeks to quiet title to real and personal property located in Indiana, specifically seeking an adjudication that the United States and Dexia have no interest in the Wexford Property as judgment creditors of Peter Rogan.

Counts II and V essentially seek identical relief against both the United States and Dexia in requesting a declaratory judgment that Defendants have no right or interest in Judith Rogan's property and that the judgment liens are invalid.  She alleges that the liens by the United States and Dexia were improper and invalid under federal law and that she and the Trust are entitled to a declaration that the "lien" is invalid, unenforceable, and must be removed immediately.

In these counts, Judith Rogan also alleges that the United States and Dexia seek other personal assets held by Judith Rogan and the Trust to which it is not entitled and that such property is not subject to the claims of Peter Rogan's creditors.  Specifically, Judith Rogan requests a declaratory judgment confirming her title and right to possession of her real and personal property assets and those in the name of the Trust, an adjudication that the United States and Dexia have no interest in her assets as a judgment creditor of Peter Rogan, and an injunction prohibiting the United States and Dexia from taking any and all action in derogation of her rights and title to real and personal property assets in her name and that of the Trust.

In Counts III and VI, Judith Rogan seeks injunctive relief against the United States and Dexia respectively relating to the sale of the Wexford property, alleging that Defendants have not alleged in any filing with the Northern District of Illinois that Judith Rogan is a "nominee" holder of assets belonging to Peter Rogan or that Judith Rogan is a fraudulent transferee of assets belonging to Peter Rogan.

Finally, Count VII against Dexia is for slander of title related to statements made by Dexia to the third-party purchasers with whom Judith Rogan contracted to sell the Wexford Property.

### D. Judith Rogan's Assets

At the time this action was commenced, the Wexford Property in Valparaiso, Indiana, was owned by the Trust.  On November 15, 2007, District Court Judge Van Bokkelen issued an order in this case withdrawing Judith Rogan's motion for a temporary restraining order as the parties had reached an agreement as to issues relating to the closing of the sale of the Wexford Property, specifically, but not limited to, the depositing of the net sale proceeds in an interest bearing account at a bank to be held in escrow pending further order of the Court.

A condominium at 55 E. Erie in Chicago, Illinois, is owned by the Trust, and Dexia represents that it is also subject to Defendants' liens.  The warranty deed for the condominium lists Judith K. Rogan Trust as the grantee and lists the sale amount as $1,107,500.00.

Judith Rogan owns an account at HSBC Bank Canada in Vancouver, through which at least $5.9 million has passed since November 2006; an account at Oceanic Bank from which Judith Rogan has transferred at least $3.8 million since September 2005; and an account at DWS Scudder through which at least $5.2 million has been transferred since 2005 and which is maintained in Flossmoor, Illinois, by L.P. Littlewood & Associates.  The account held with LP Littlewood & Associates is in the name of the Judith K. Rogan Revocable Trust and the JKR Business with an address in Merrillville, Indiana.

In her December 5, 2007 Affidavit, Judith Rogan avers that her cars are registered in Indiana as are her bank accounts and that she holds an Indiana driver's license and is registered to vote in Indiana.  She further states that she carries on no active business in Illinois, that she has not carried on any active business in Illinois during the last ten years, that she has no loans from or to any Illinois business or individual, that she owns no licenses in Illinois nor is she registered with any

Illinois agency or entity, that she has no debts and owes no judgments in Illinois, and that she has

never brought suit nor been a defendant in a suit in Illinois.  She also states that she does not travel

to Illinois on any regular basis, except for periodic leisure or entertainment activities in Chicago.

Judith Rogan does not offer any documentary evidence in support of these statements.


### E. Judith Rogan's Residence

In her Complaint filed on November 2, 2007, Judith Rogan alleges that she resides at the

Wexford Property in Valparaiso, Indiana.  In her December 5, 2007 Affidavit filed in support of her

response to the instant motion, Judith Rogan avers that she "is a resident of Valparaiso, Indiana in

Porter County and has resided in Valparaiso for over 20 years."  Pl. Br., Exh. C.

On August 14, 2007, a purchase agreement for the sale of the Wexford Property to third-

party purchasers was signed.  As noted in Part D above, on November 15, 2007, District Court Judge

Van Bokkelen issued an order in this case withdrawing Judith Rogan's motion for a temporary

restraining order as the parties in this case had reached an agreement as to issues relating to the

closing of the sale of the Wexford property, specifically, but not limited to, the depositing of the net

sale proceeds in an interest bearing account at a bank to be held in escrow pending further order of

the Court.  Plaintiff has not indicated where she is living following the sale of the Wexford Property.


### F.  The United States' Foreclosure Complaint and Lis Pendens

Dexia represents that, on November 11, 2007, the United States filed a complaint seeking

to foreclose on the liens it has filed on the Wexford Property and the condominium in Chicago,

which were brought under the Federal Debt Collection Procedure Act.  On or about November 13, 2007, the United States filed a *lis pendens* on the Wexford Property in Porter County, Indiana.

## ANALYSIS

Dexia moves to transfer this matter under both the "first-to-file" rule and 28 U.S.C. § 1404(a).  Judith Rogan responds that the relief sought by Dexia is not available under either theory, especially given that Dexia chose to enforce its foreign judgment in Indiana against a non-debtor who resides in Indiana and against real estate in Indiana.  Judith Rogan argues that this action is completely independent of any claims Dexia or the United States has made in their underlying lawsuits against Peter Rogan and asserts that this present action seeks relief, *inter alia*, for Dexia's own tortious conduct committed in Indiana against Judith Rogan.  However, Judith Rogan fails to acknowledge that an adjudication of whether Defendants have any valid interest in the Wexford Property will require a determination as to whether Judith Rogan holds property for the benefit of Peter Rogan, which in turn will require consideration of the facts underlying the fraud actions. Moreover, although her Complaint seeks to quiet title to real and personal property in Indiana, including the Wexford Property, the Complaint also seeks a declaratory judgment that *all* of her personal and real property is held free and clear of the claims of her husband's creditors, including judgment creditors Dexia and the United States.

### A.  28 U.S.C. § 1404(a)

Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Therefore, (1) venue must be proper in the transferor court; (2) venue must be proper in the transferee court; and (3) the transfer must serve the convenience of the parties and witnesses and must be in the interest of justice.  *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).[5]  Dexia has the burden under § 1404(a) of proving that the Northern District of Illinois, Eastern Division, is "clearly more convenient" than the Northern District of Indiana, Hammond Division.  *Id*. at 219-20.  The decision to transfer an action is within the sound discretion of the trial court.  *Id*. at 219.  The transfer analysis is a case-by-case, fact-intensive inquiry; the statute does not indicate the relative weight to be accorded each factor. *Id*.

### 1. Venue

As to the first requirement under § 1404(a), the parties agree that venue is proper in this court.  However, they disagree whether the case originally could have been brought by Judith Rogan in the Northern District of Illinois against Defendants United States of America and Dexia.  In other words, Judith Rogan contends that venue is not proper in the Northern District of Illinois.

---

[5] In her response brief, Judith Rogan argues that Illinois courts do not have personal jurisdiction over her, and, therefore, this matter cannot be transferred to an Illinois court.  However, personal jurisdiction over a plaintiff in the transferee forum is irrelevant on a motion to transfer venue under § 1404(a) because the consideration is whether the plaintiff could have brought suit in the transferee court, and a plaintiff, by bringing a suit consents to the jurisdiction of the Court. *See Cosmetique, Inc. v. Robert Haydon Jones & Assocs.*, No. 04 C 3139, 2004 WL 1510012, at *2, n. 1 (N.D. Ill. July 1, 2004); *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 819 (W.D. Mich. 2002); *North Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 791 n.7 (N.D. Ill. 1995).  The issue on transfer under § 1404(a) is whether Judith Rogan could have sued Defendants in Illinois, not the inverse.

First, as to Defendant Dexia, which is a foreign bank, venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(d), which provides that "[a]n alien may be sued in any district."[6] However, because venue for an alien defendant such as Dexia is proper in any district and because venue must be properly laid as to each Defendant, the Court must consider whether venue is also proper in the Northern District of Illinois as to non-alien Defendant United States of America. *See Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 857 (N.D. Ill. 2005).

The applicable venue provision for Defendant United States is 28 U.S.C. § 1391(e), which provides:

> A civil action in which a defendant is . . . the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

---

[6]In a footnote to her brief, Judith Rogan argues that § 1391(d) is inapplicable because, according to Dexia's Second Amended Complaint filed against Peter Rogan, Dexia conducts operations in the United States through its New York agency, which is licensed under the laws of the State of New York as an unincorporated agency of Dexia. However, Plaintiff offers no law in support of her argument that Dexia is not an "alien" for the purposes of venue as a result of its relationship with its New York agency.

Even if § 1391(d) were not applicable, 28 U.S.C. § 1391(b)(2) would make venue proper in the Northern District of Illinois as to Dexia. Section 1391(b) provides:

> A civil action wherein jurisdiction *is not founded solely on diversity of citizenship* may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a *substantial part of the events* or omissions giving rise to the claim occurred, or a *substantial part of property* that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (emphasis added). As set forth in the Court's holding below that 28 U.S.C. § 1391(e)(2) provides for venue in the Northern District of Illinois as to Defendant United States, so does § 1391(b)(2) provide for venue in the Northern District of Illinois as to Dexia because a substantial part of property that is the subject of the action is situated in Chicago, Illinois, and a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois.

28 U.S.C. § 1391(e).  Subsection (e)(1) does not apply in this case because there is not a district in which any of the Defendants "resides," and subsection (e)(3) is equally inapplicable because real property is involved in the action.  Therefore, the standard under § 1391(e)(2) must be applied.

Substantial property that is the subject of this action is located in both Illinois and Indiana.  As noted above, Judith Rogan seeks not only relief specifically related to the Wexford Property located in Valparaiso, Indiana, but also seeks a declaratory judgment as to all of her real and personal property.  Based on the evidence before the Court, at the time of filing her Complaint, Judith Rogan owned real property in Illinois and Indiana.  She owns a condominium in Chicago, Illinois, as evidenced by a warranty deed executed on June 3, 2004, listing Judith K. Rogan Trust as the grantee for $1,107,500.00.  The Trust also owns the Wexford Property in Indiana, which is the subject of an August 14, 2007 Purchase Agreement for $1,600,000.00 with a third party.[7]  In her December 5, 2007 Affidavit, Judith Rogan avers that her cars and bank accounts are registered in Indiana.  She also states that, other than the condominium she owns in Chicago, her real property is "located in Indiana;" however, she does not identify any real property in Indiana in the Affidavit.

Therefore, because the condominium located in Chicago, Illinois, is a substantial part of the property that is the subject of this action, venue is proper as to Defendant United States in the Northern District of Illinois.  *See* 28 U.S.C. § 1391(e)(2); *see also Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 66 (D.D.C. 2003) (concluding venue was proper in the Southern District of Florida based, in part, on real property located there) (citing *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp.

---

[7] On November 15, 2007, the District Court entered an order in this case withdrawing Plaintiff's motion for temporary restraining order on the basis that the parties had agreed that the closing of the anticipated sale of the Wexford Property would proceed as soon as possible and that the net sale proceeds after payment of the first mortgage, tax proration, and closing costs would be deposited in an interest bearing account at a financial institution to be selected by Judith Rogan and would be held in escrow pending further order of the Court.

13, 16 (D.D.C. 1996) (finding venue proper in Colorado because the plaintiffs' claims arose out of a nucleus of facts involving property situated entirely within Colorado)).

In addition, a substantial part of the events giving rise to Judith Rogan's claims occurred in Illinois as well. *See* 28 U.S.C. § 1391(e)(2). As Judith Rogan asserts, the liens that the United States and Dexia placed on her Indiana real property were filed in Indiana. Nevertheless, the construction of the Wexford Property was directed from Illinois and its funding came from an Illinois bank. In addition, Judith Rogan is seeking a declaratory judgment as to all of her property, not simply the Wexford Property, including the Chicago condominium, which is also subject to liens by Defendants. Moreover, a determination of whether Judith Rogan's personal and real property, regardless of where it is located, is held free and clear of the claims of her husband's judgment creditors the United States and Dexia will turn on the events surrounding the underlying fraud by Peter Rogan and the transfer of funds to his family members; essentially all such events occurred in Illinois. For example, any transfer of fraudulent funds by Peter to Judith Rogan would have been initiated in Illinois, and the funds received by Judith Rogan's company, JKR Business, from Braddock and EMC were transferred within Illinois. Finally, the causes of action brought by the United States and Dexia against Peter Rogan, which are referenced in the Complaint in this matter and as a result of which the United States and Dexia became judgment creditors of Peter Rogan, were filed and adjudicated in the Northern District of Illinois.

Accordingly, the first two requirements for transfer of venue under § 1404(a) are met.

*2.  Convenience of the Parties and the Interest of Justice*

Notwithstanding proper venue both here and in the Northern District of Illinois, the Court can transfer this case only if the balance of the public interest in justice and the private interest in convenience weigh in favor of transfer.  *See N. Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 791 (N.D. Ill. 1995).  The factors to be considered when determining the private interests of the parties include: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the convenience of the parties; and (4) the convenience of the witnesses.  *See American Roller Co., LLC v. Foster Adams Leasing, LLP*, 421 F. Supp. 2d 1109, 1114 (N.D. Ill. 2006) (citing *College Craft Co., Inc. v. Perry*, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995)); *Kretz v. Harsco Corp.*, No. S92-353M, 1992 WL 392633, *2  (N.D. Ind. Sept. 22, 1992).  "The factors to be evaluated in assessing the public interest of the court include the court's familiarity with the applicable law and concerns relating to the efficient administration of justice."  *American Roller Co.*, 421 F. Supp. 2d at 1114.

Notably, the only arguments Judith Rogan offers in support of her position that the convenience of the parties and interests of justice do not support transferring this matter to Illinois are, without further analysis, that "the Wexford Property is located in Indiana and all conduct relevant to plaintiff's claims occurred in Indiana" and that "[t]he issues germane to the immediate matter are wholly unrelated to the pending Illinois citation proceedings and the relevant records, including the title company files and witnesses, are subject to compulsory process in Indiana."  Pl. Br. at pp. 25-26.  However, as set forth above and discussed more fully below, Judith Rogan's Complaint alleges conduct that occurred in Illinois, other property of Judith Rogan's is located in Illinois and outside the United States, and the underlying fraud actions relevant to the claims the Defendants have against her property occurred in Illinois.

17

a. Convenience

In this case, Judith Rogan's forum choice was Indiana state court, and the matter was removed to Indiana federal court by Defendant United States. "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed . . . . Rarely, however, is not never." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (citations omitted). When the operative facts of the cause of action have little connection to the forum, a plaintiff's choice of forum is given less weight. *See Heartland Packaging Corp. v. Sugar Foods Corp.*, No. 1:06-CV-0828, 2007 WL 101815, at *2 (S.D. Ind. Jan. 9, 2007). In addition, a plaintiff's choice of forum carries less weight when the plaintiff does not reside in the forum. *See Kelley Buick of Atlanta, Inc. v. TIG Ins. Co.*, 1:05-CV-271-TS, 2005 WL 3238325, at *2 (N.D. Ind. Nov. 29, 2005) (citing *Barnes v. Rollins Dedicated Carriage Servs., Inc.*, 976 F. Supp. 767, 768 (N.D. Ill. 1997)).

Here, Plaintiff Judith Rogan's choice of forum is given less weight because the majority of the operative facts of this case are connected to Illinois. As argued by Judith Rogan, some of the events and issues related to her action to quiet title as to the Wexford Property in Indiana as a result of the liens filed by Defendants are directly connected to Indiana. Notwithstanding these connections, some of the evidence related specifically to the Wexford Property also originates in Illinois, including that the financing for and coordination of the home originated in Illinois: Boulevard Bank in Illinois loaned Peter Rogan the funds to pay for the house's construction, Peter Rogan directed construction of the house from his office at EMC in Chicago, and Daniel Schuman, an employee of Peter Rogan's company Braddock, which managed EMC in Chicago, assisted Peter Rogan in directing the house's construction. In addition, the second count of Judith Rogan's

18

Complaint seeks a declaratory judgment that her personal and real property is not subject to the claims of her husband's judgment creditors. Her condominium is located in Illinois, and she has accounts outside of the United States, neither of which she raises in her Complaint.

In addition, as alleged in her Complaint, Judith Rogan's cause of action is a result of the proceedings pending against her husband in the Northern District of Illinois–*United States v. Rogan* and *Dexia v. Rogan*–and a result of the citations issued to her in those actions in the Northern District of Illinois by Defendants in this case. She has responded to those citations in the Northern District of Illinois through which Defendants seek to discover assets that Judith Rogan may hold for the benefit of Peter Rogan.

Perhaps most importantly, a determination of whether Judith Rogan's personal and real property is subject to the judgment creditors of Peter Rogan and whether Defendants have a valid interest in the Wexford Property will turn on the events and transactions underlying the fraud actions against Peter Rogan and whether he transferred funds gained from his fraudulent action to his wife, Judith Rogan. The events underlying the fraud in those cases took place in Illinois and Peter Rogan's companies involved in the fraud were in Illinois. The sole source of income since 1997 of Judith Rogan's purported sole proprietorship, JKR Business, allegedly a failed decorating company, is payments from Peter Rogan's companies Braddock and EMC in Chicago for "business services fees." Those fees were deposited into an account at the Private Bank and Trust in Chicago.

Dexia represents that the only JKR Business financial records it has been able to obtain have come from sources in Chicago: Private Bank & Trust Company, EPC, and attorneys John Foley and John Tatooles. It appears that most of the discovery into Peter Rogan's financial transactions, which has already been produced in the course of the underlying proceedings, is housed in Chicago,

19

including those documents which had been previously located in Peter Rogan's office in Merrillville, Indiana. Dexia represents that the financial records it has obtained related to the Rogans' assets are located in the Chicago office of Dexia's counsel and that Dexia is continuing to obtain additional and more recent financial records in Chicago from Judith Rogan's Chicago attorney, Peter O'Rourke, in the citation proceedings.

Finally, Dexia argues that, contrary to her Complaint and her unsupported assertion in her Affidavit, Judith Rogan does not own substantial personalty throughout Indiana, an argument that Judith Rogan does not contest in her response brief. Dexia argues that, although she may maintain miscellaneous personal effects in the Wexford Property and *de minimis* amounts in Indiana bank accounts, her substantial assets include her condominium in Chicago and her bank accounts at Oceanic Bank in The Bahamas and HSBC in Canada.

In considering the convenience of the parties and the witnesses, the Court looks to evidence and witnesses located in both Indiana and Illinois. First, as to the parties, "[t]his factor involves the consideration of the parties' respective residences and their abilities to bear the expense of trial in a particular forum." *College Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1056 (N.D. Ill. 1995) (quoting *Heller*, 713 F. Supp. at 1130-31). Judith Rogan states in her December 2007 Affidavit that she resides in Porter County, Indiana; however, the Wexford Property has been or will soon be sold, she does not indicate in her Affidavit where in Porter County she resides, she signed a lease for a condominium in Vancouver in 2006 and renewed that least for the period of May 1, 2007 through October 31, 2007, and she opened a bank account in Vancouver, Canada. Given that the geographic seat of the Northern District of Illinois, Eastern Division (Chicago), and the geographic seat of the Northern District of Indiana, Hammond Division (Hammond), are within approximately twenty-five

miles of each other and that the two divisions are geographically contiguous, regardless of where Judith Rogan is living, any inconvenience in the farther district is minimal.  To that extent, the inconvenience to the Defendants of litigating in Indiana is equally minimal as counsel for the United States and for Dexia are located in Chicago.  If Judith Rogan indeed lives outside of Indiana, then her choice of forum is also given less consideration as well.

However, when the Court turns to the convenience of the witnesses and considers the nature and quality of the witnesses' testimony, the balance weighs in favor of Illinois.  *See, e.g.*, *Gueorguiev v. Max Rave, LLC*, – F. Supp. 2d –, 2007 WL 4259469, at *3 (N.D. Ill. Nov. 3, 2007) (citing *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1168 (N.D. Ill. 1995)); *College Craft*, 889 F. Supp. at 1055 (same).  As argued by Judith Rogan, some of the witnesses related to the issues surrounding the Wexford Property will be located in Northwest Indiana, yet some are also potentially located in Illinois.  However, as discussed above, because the issues relating to whether Judith Rogan is holding property for the benefit of Peter Rogan affect both the Indiana and Illinois property and because the majority of the evidence and witnesses related to the underlying fraud, which will ultimately determine the interest Defendants have in any of Judith Rogan's property, are in Illinois or outside of Illinois (for example, Peter Rogan, who appears to have left the United States), more of the witnesses related to the most substantial issues in the case are located in Illinois.

b. Interest of Justice

The "interest of justice" analysis focuses on the efficient administration of the judicial system, rather than on the private considerations of the litigants.  *College Craft*, 889 F. Supp. at 1056 (citing *Coffey*, 796 F.2d at 220-21; *Espino v. Top Draw Freight Sys., Inc.*, 713 F. Supp. 1243, 1245

(N.D. Ill.1989)).  Considerations taken into account include "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Id*. (quoting *Heller*, 883 F.2d at 1293).

First, to the extent that Indiana law may be applied to the disputes regarding the Wexford Property, a federal district court in Illinois is equally competent to apply the proper law as an Indiana federal court.  Similarly, both courts are capable of analyzing the appropriate law related to the Illinois property and the property located outside the United States as well as to the determination of whether Judith Rogan is holding property for the benefit of Peter Rogan.  In addition, both districts appear to have an interest in the disposition of real property at issue in this case because of the Chicago condominium in Illinois and the Wexford Property in Indiana.[8]  As to the enforcement of the judgments against Peter Rogan, Illinois has more of an interest in the judgments on the underlying fraudulent transactions that will factor into the determination of whether Judith Rogan's personal and real property is subject to the judgment creditors of Peter Rogan, whether that property is located in Illinois or Indiana.

Most importantly, the Northern District of Illinois, Eastern Division, is already intimately familiar with the complex underlying litigation against Peter Rogan, specifically the nature of the fraud and of his transfer of funds to his family members.  The instant action is closely related to that underlying litigation as Judith Rogan is seeking to adjudicate the effect of the judgments entered in those cases on her personal and real property; she seeks a determination of whether Dexia and the United States can execute upon assets in her name to satisfy those judgments.  As argued by Dexia,

---

[8] As noted earlier, the Wexford Property is under contract to be sold or has been sold and the proceeds of the sale will be held or are being held in escrow subject to Defendants' liens.  Based on the District Court's November 15, 2007 Order, the parties have agreed to the sale of the Wexford Property free and clear of Defendants' liens or Defendants' interests with the claims of Defendants attaching to the escrow sale proceeds.

the Northern District of Illinois is uniquely positioned to assess the issue of whether Peter Rogan has used his family members, specifically his wife Judith Rogan, to hold and maintain his assets. For example, in *Dexia v. Rogan*, the court has supervised extensive discovery regarding Peter Rogan's assets and finances, presided over hearings related to Peter Rogan's transfer of assets to family members, and ruled on motions to compel and motions for sanctions related to the discovery of Peter Rogan family assets.

Although Judith Rogan asserts that Indiana has "compulsory process" over the Indiana witnesses, the availability of compulsory process is not an issue as no reluctant witnesses have been identified. *See Mleczek v. Aspen Skiing Co., LLC*, No. 07 C 0238, 2007 WL 1810530, at * 3 (N.D. Ill. June 20, 2007). It also appears that the Indiana witnesses related to the property in Porter County are located within the 100-mile radius of the subpoena power of the Northern District of Illinois, Eastern Division. *See* Fed. R. Civ. P. 45(b). In addition, as noted by Dexia, some potential witnesses are also beyond the subpoena power of either court, such as Peter Rogan, Fred Cuppy, who is Peter Rogan's attorney and who lives in Florida, and individuals in Canada familiar with the Rogans' recent financial dealings in Vancouver.

Finally, neither party has raised the issue of which district will bring this case to disposition more quickly. The two most relevant statistics from each district to this determination are the median months from filing to disposition and the median months from filing to trial. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000) (citing *Vandeveld*, 877 F. Supp. at 1169). In 2006, the year for which the most recent statistics are available, the median time from filing to disposition was 6.5 months in the Northern District of Illinois and 10.8 months in the Northern District of Indiana, and the median months from filing to trial was 26.4 months in the

Northern District of Illinois and 25 months in the Northern District of Indiana.  *See* Federal Court

Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl.  Because the districts have

comparable statistics, this factor does not affect the decision on the motion to transfer.

*3. Section 1404(a) Conclusion*

A balance of all of these considerations weighs in favor of transfer of this case to the

Northern District of Illinois.  On one hand, Judith Rogan brought this cause of action in the Northern

District of Indiana, where she owned residential property at the time this case was filed, where some

of the property at issue in the Complaint is located, and where some of the witnesses and records

are located.  On the other hand, the volume of documents and the witnesses located in Illinois, the

overall convenience of the witnesses, the fact that most of the material events took place in Chicago,

Illinois, the familiarity of the Northern District of Illinois with the facts of the underlying fraud and

the Rogan family assets, and the public interest in the determination of whether Peter Rogan's

judgment creditors can reach the personal and real property of Judith Rogan favor transfer.

Therefore, Dexia has established that the Northern District of Illinois is the better forum for

resolving the present dispute, and the Court orders that this case be transferred.

**B.  Transfer Under the "First-to-File" Rule**

Defendant Dexia also moves to transfer this case to the Northern District of Illinois under

the "first-to-file" rule, which Judith Rogan opposes.  Because the Court has found that transfer is

proper under 28 U.S.C. § 1404(a), a determination of whether the case should be transferred under the "first-to-file" rule is unnecessary.[9]

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Dexia Crédit Local's Motion to Transfer Venue and Memorandum in Support [DE 24] and **ORDERS** that venue in this matter be transferred to the Northern District of Illinois.

So ORDERED this 31st day of January, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record

---

[9] In her response brief, Judith Rogan argues that the Northern District of Illinois does not have ancillary jurisdiction in the citation actions filed against Judith Rogan and thus there is no federal jurisdiction over Dexia's alleged "pending" Illinois "action." Although this issue may be relevant to an analysis of the "first-to-file" rule, it does not affect the Court's determination that transfer under § 1404(a) is appropriate.